## UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ENGINUITY, LLC** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **Civil Action No. _____** |
| **v.** | ) | |
| | ) | **CLASS ANTITRUST** |
| **VIEGA LLC,** | ) | **ACTION** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |
| | ) | |

## <u>COMPLAINT</u>

Plaintiff Enginuity, LLC brings this action for injunctive relief under Sherman Act Sections One and Two (15 U.S.C. §§ 1, 2) and Clayton Act Section Sixteen (15 U.S.C. § 26), as well as damages pursuant to state antitrust law allowing indirect-purchaser remedy under this Court's supplemental jurisdiction against Viega LLC. It will show the Court as follows:

### NATURE OF THE ACTION

1.    This is an antitrust action directed at Viega's anticompetitive conduct in the relevant markets for copper press fittings and carbon steel press fittings.

2.    Fittings are essential components of pipeline systems that are used to join pipes or tubes. Fittings can join pipes in straight lines or change, divide, or

otherwise direct the flow of media, including potable water, process water, oil, gases, and fuel. Fittings are produced in geometrical configurations of varying sizes and surface coating.

3.     Pipeline systems, including fittings, can be made from different raw materials, such as copper, bronze, carbon steel, stainless steel, and thermoplastics. The plumbing industry differentiates between these pipeline systems because each one has optimal benefits suited to different applications.  Black iron pipe is used, for example, to transport fuel oil and natural gas, but is never used to transport medical oxygen.

4.     Press technology refers to the use of hydraulic power tools and jaws to press or crimp a joint to create a permanent seal between the fitting and pipe. Press technology provides a faster, safer, and more reliable method of joining fittings and pipe without compromising the quality of installation.

5.     Viega is a privately-owned company that manufactures, imports, and sells fittings in the United States.

6.     Viega has possessed for several years market power in the relevant market for carbon steel press fittings, which are press fittings used for black iron pipe. Viega's carbon steel press fittings were the first to market and, until July 2017, the only carbon steel press fittings approved in the United States. Viega controls at least 95% of the relevant market for carbon steel press fittings.

7.     Viega also holds a well-established, dominant position in the relevant market for copper press fittings, which are press fittings used for copper pipe. It controls approximately 71% of the U.S. market.

8.     NIBCO, Inc. is a family and employee owned business with over 100 years of experience in manufacturing and selling fittings. It is Viega's most significant competitor in the relevant market for copper press fittings and has brought lost-profit claims in this Court before Chief Judge Christopher C. Connor in *NIBCO Inc. v. Viega LLC*, Civ. NO. 1:17-cv-01739-CCC (filed 9/26/2017). On average, NIBCO's prices for copper press fittings are substantially lower than Viega's prices. NIBCO does not manufacture carbon steel press fittings and thus does not sell in this relevant market.

9.     Fitting manufacturers such as NIBCO and Viega sell fittings almost entirely through wholesale distributors. The wholesale distributors in turn sell fittings to contractors, developers, and other end users in the proposed Class.

10.    To enhance or at least maintain its dominant position in the relevant market for copper press fittings Viega has engaged in systematic anticompetitive and exclusionary conduct to undermine the attempts of NIBCO and other Viega competitors to compete in the relevant market for copper press fittings.

11.    Viega has used its monopoly power in the relevant market for carbon steel press fittings to coerce wholesale distributors not to buy copper press fittings

from NIBCO and other Viega competitors. Viega refuses to sell its carbon steel press fittings unless a wholesale distributor also purchases Viega's copper press fittings and does not purchase copper press fittings from NIBCO and other Viega competitors.

12.   Viega also coerces wholesale distributors not to purchase copper press fittings from NIBCO and other Viega competitors by withholding discounts, rebates, and other pricing concessions for its carbon steel press fittings. This pricing penalty renders the purchase from Viega the combination of its copper press fittings and carbon steel press fittings the only viable economic option.

13.   Viega's conduct has excluded and suppressed Viega's competitors from the relevant market for copper press fittings, and substantially impaired competition in this market, not because Viega has a better product or a lower price, but because of the leveraging of its power in the market for carbon steel press fittings. As a consequence, wholesale distributors are forced to forego their free choice and pay higher, above-competitive prices. This antitrust price injury has in turn been passed on, all or in part, to end users in the proposed state Class and its Subclasses.

14.   Viega's anticompetitive conduct has been effective in maintaining and stabilizing prices paid by wholesalers, and ultimately end users, at above-competitive levels, inflicting antitrust injury on both, excluding actual and potential competition, maintaining its market power, and fortifying greatly regulatory and

technological barriers to entry in the copper press fittings market.

## THE PARTIES

15.    Plaintiff Enginuity, LLC is a commercial mechanical contractor incorporated under the laws of the state of Pennsylvania and headquartered in Mechanicsburg, PA. Over the last four years Plaintiff has made purchases of Viega copper press fittings from one or more Viega wholesale distributors.

16.    Defendant Viega manufactures and distributes plumbing, heating, and pipe joining systems for industrial, commercial, and residential projects. Viega is a limited liability company organized under the laws of the state of Delaware with its U.S. headquarters located at 12303 Airport Way, Suite 395, Broomfield, Colorado 80021. Its Northeast Distribution Center is maintained and operated in Harrisburg, Pennsylvania. Viega acts as an agent for its parent corporation Viega GmbH & Co. KG, which is located in Atterndorn, Germany.

## JURISDICTION AND VENUE

17.    Plaintiff brings this lawsuit for injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. § 1337(a).

18.    This Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the causes of action arise under the laws of the United States. This Court has supplemental jurisdiction over the damage causes of action asserted under state law pursuant to 28 U.S.C. § 1367 because these causes of

action are so related to the causes of action within the Court's federal question jurisdiction that they form part of the same case or controversy.

19.     Defendant is subject to personal jurisdiction in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, because it transacts business in this District, including through its distribution center in Harrisburg, Pennsylvania.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)-(d) and 15 U.S.C. §§ 15 and 22 because Defendant resides, is doing business in, has and had agents in, and is found to transact business in this District.

## TRADE AND COMMERCE

21.     Viega has sold copper press fittings and carbon steel press fittings in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district. Every year it sells approximately $115 million in copper press fittings in United States interstate commerce.

22.     Viega's business activities were intended to and have had a substantial effect on interstate trade and commerce in the United States, including in this judicial district.  By way of example only, its primary competitor in the relevant market for sale of copper press fittings, NIBCO,  would have had a substantially greater market share in the relevant market for copper press fittings given the range and quality of its products but for Viega's anticompetitive conduct. *See infra* ¶¶ 66-92.

## RELEVANT MARKETS

### Relevant Product Market for the Sale
### of Copper Press Fittings

23.     There are two relevant product markets at issue here, the market for the sale of copper press fittings and the market for the sale of carbon steel press fittings.

24.     Copper pipe is the leading choice of contractors for plumbing, heating, and cooling applications. It can be used for potable water service and distribution, industrial process water, air conditioning and refrigeration field service, compressed medical air, medical gas, drain/waste/vent applications, and HVAC applications. The type of copper pipe to be used in a particular application is governed by plumbing and mechanical codes.

25.     Press technology refers to the use of hydraulic power tools and jaws to press or crimp a joint to create a permanent seal between the fitting and pipe. The joints rely on the sealing capability of a special fitting that contains an elastomeric gasket or seal (such as EPDM). Press technology takes advantage of copper's excellent malleability and its proven increase in strength when cold worked.

26.     Copper press fittings reduce labor cost by allowing contractors to join copper pipe in less time than traditional soldering or brazing. The fittings allow plumbers to complete projects with less time, budget and manpower. All that is required to install a copper press fitting is removing burrs from the outer and inner diameter of the pipe, sliding the fitting onto the pipe to minimum insertion depth, and

7

pulling the trigger on a power tool. Installation can be completed in three to 30 seconds depending on the joint size. Moreover, the tools are lightweight, battery powered, and easy to handle, which allows installers to remain mobile.

27.    Copper press fittings also offer the advantage of flame-free installations. This eliminates flames, solder, flux, gas tanks, fumes, and noxious gases, as well as the need for a hot work permit, fire watch, and fire extinguishers. As a result, the job site is safer because piping systems can be installed in occupied spaces with no risk of a fire hazard. Three manufacturers account for over 90% of the copper press fittings sold in the United States: Viega, NIBCO and Elkhart Products Corporation ("EPC").

28.    Viega introduced its copper press fittings to North America in 1999. They are sold under the brand name ProPress® and are available in multiple configurations from ½" to 4" diameter.

29.    According to its marketing materials, Viega's copper press fittings are manufactured with the patented Viega Smart Connect® feature, which helps to identify connections that need to be pressed by allowing an unpressed fitting to leak during pressure testing.

30.    Viega has been and continues to have the highest market share of copper press fittings sold in the United States. In 2016, Viega's net sales were approximately $115,000,000, which is approximately 71% of the U.S. copper press

fittings market.

31.     NIBCO is Viega's most significant competitor in the market for copper press fittings. In 2016, it had approximately 17% of the U.S. copper press fittings market, by net sales.

32.     On average, NIBCO's prices for copper press fittings are substantially lower than Viega's prices for copper press fittings.

33.     EPC is a minor player in the copper press fittings market. In 2016, it had approximately 5% of the U.S. copper press fittings market, by net sales.

### Relevant Product Market for the Sale of Carbon Steel Press Fittings

34.     Black iron pipe is a form of steel pipe that is less expensive and more malleable than other iron or steel pipes. It has a black oxide scale on its surface.

35.     The strength of black iron pipe makes it ideal for transporting gas or propane in rural and urban areas, and for delivering high pressure steam and air. The oil and petroleum industries use black iron pipe for moving large quantities of oil through remote areas. Other uses for black iron pipe include gas distribution inside and outside homes, water wells, sewage systems, and fire protection systems.

36.     Carbon steel press fittings, the press fittings for black iron pipe, rely on hydraulic power tools and jaws to press or crimp a joint to create a permanent seal between the fitting and pipe. The joints rely on the sealing capability of a special fitting that contains a sealing element.

37.     Viega represents in its marketing material that carbon steel press fittings allow plumbers to complete projects with less time, budget, and manpower. Viega also represents that carbon steel press fittings offer the advantage of flame-free installations, which eliminates the risk of a fire hazard.

38.     Viega was the first manufacturer to market a carbon steel, cold mechanical press system approved in the United States. Its carbon steel press fittings are sold under the brand names MegaPress® and MegaPress G®, and are available in configurations from ½" to 2" diameter. Viega's marketing material indicates that its carbon steel press fittings are designed exclusively for connection to and installation of black iron piping.

39.     According to Viega's marketing material, the MegaPress® is approved for use in hydronic heating, compressed air, fire sprinkler, and cooling water applications. Its carbon steel press fittings have Viega's patented Viega Smart Connect® feature. They also include an EPDM sealing element, a 304 stainless steel separator ring, and a 420 stainless steel grip ring. The EPDM sealing element is approved for use in heating, cooling, and industrial systems ranging from fire protection and compressed air to chilled water.

40.     According to Viega's marketing material, the MegaPress G® is approved for use in fuel oil and fuel gas installations. Its carbon steel press fittings have Viega's patented Viega Smart Connect® feature. They also include an HNBR

sealing element, a 304 stainless steel separator ring, and a 420 stainless steel grip ring. The HNBR sealing element is approved for use in fuel, oil, lubricants and gasses ranging from diesel fuel and propane to natural gas

41. Viega's MegaPress® and MegaPress G® were the only carbon steel press fittings approved in the United States until July 2017. As a result, Viega controls at least 95% of the carbon steel press fittings market.

42. The markets for copper press fittings and carbon steel press fittings are distinct product markets because they are distinguishable in the eyes of fitting manufacturers, wholesale distributors, and end users for use with specific piping products. Copper press fittings are designed to be used with copper piping and carbon steel press fittings are designed to be used with black iron piping. Furthermore, the demand and pricing for copper press fittings and carbon steel press fittings are distinct. For example, NIBCO has asserted in this Court that it does not track the price of carbon steel press fittings when setting the price of its copper press fittings.

43. Copper press fittings are not reasonably interchangeable with any other product and do not have cross-elastic demand with any other product. Copper press fittings are the only type of press fittings that can be used to join copper piping.

44. Carbon steel press fittings are not reasonably interchangeable with any other product and do not have cross-elastic demand with any other product. Carbon

steel press fittings are the only type of press fittings that can be used to join black iron piping.

## Relevant Geographic Markets

45.    The relevant geographic markets for each product market are the United States. Manufacturers of copper press fittings ship their products nationally from multiple locations to wholesale distributors located across the United States.

46.    The manufacturers of carbon steel press fittings sell from multiple locations to wholesale distributors located across the United States.

## VIEGA'S MARKET POWER

47.    Viega has substantial market power in both relevant markets.

48.    Viega's carbon steel press fittings were the first to market and, until July 2017, the only carbon steel press fittings approved in the United States. Viega controls at least 95% of the relevant market for carbon steel press fittings.

49.    As to the market for copper press fittings, in 2016, Viega controlled approximately 71% of the market.

50.    There are significant barriers to entry in both relevant markets helping to protect and maintain Viega's market power. These include intellectual property, technological and regulatory barriers. Effective entry into the relevant markets requires developing expertise in design engineering, obtaining certifications and approvals, securing placement on engineers' approval lists, and securing placement

in specifications, which are often mandated by municipal code or by state or federal law.

51.     Additionally, the level of capital investment is significant. An entrant would need to build its own foundry or develop a supply chain of foundries to produce fittings, develop or purchase hundreds of patterns or moldings necessary to make a full line of fittings, and establish relationships with end users, contractors, and wholesale distributors based on a reputation for quality and service.

52.     Further, Viega's anticompetitive conduct has enhanced these barriers to entry in the relevant market for copper press fittings by creating barriers to entry or expansion by Viega's competitors.

## PRODUCT DISTRIBUTION

53.     Demand for copper press fittings and carbon steel press fittings typically begins with an end user creating a project design that includes specifications for piping and other components to be used for the project. Engineers are usually responsible for drafting fitting specifications, which are often mandated by municipal code or by state or federal law.

54.     The project specifications are used to solicit bids from contractors. Once the contractors receive the specifications, they will solicit bids and other assistance from wholesale distributors that can supply various products for that project. These distributors employ sales personnel dedicated to servicing the needs

of contractors, and can generally satisfy the needs of contractors with pre- existing inventory.

55.    Contractors rely on wholesale distributors because: (a) distributors offer a full spectrum of plumbing products; (b) distributors provide a single point of contact for all products; (c) distributors find alternate supply sources when needed; and (d) distributors have relationships with manufacturers and specification knowledge.

56.    Contractors generally source all of their project requirements from a single wholesale distributor, as a "one-stop" shop, because it allows the contractor to access service, payment, and delivery from a single source rather than duplicating administrative effort with multiple sources.

57.    Contractors typically select wholesale distributors based on price, service, and convenience. Generally, contractors can negotiate better pricing when they have the option of purchasing fittings from multiple wholesale distributors.

58.    The wholesale distributor will supply the contractor either from its inventory or via a direct purchase order from the wholesale distributor to a fittings manufacturer who will deliver the product to the project site.

59.    Fitting manufacturers rely on wholesale distributors because: (a) distributors offer better sales coverage than the manufacturer would have with its own sales force alone; (b) distributors have more influence on and more knowledge

of projects; (c) distributors free up a manufacturer's working capital by carrying inventory; (d) distributors offer one-stop shopping for the end user or its contractor; (e) distributors aggregate small orders from and shipments to contractors; (f) distributors help manufacturers get their products in specifications; and (e) distributors manage credit requests and absorb the risk of non-payment from contractors.

60.    In a free and competitive market, wholesale distributors may carry the product lines of multiple fittings manufacturers, which are selected by wholesale distributors based on end user demand, product quality, price, and historical relationship.

## VIEGA'S ANTICOMPETITIVE TYING

61.    To maintain its dominant position in the market for copper press fittings, Viega uses its market power in the carbon steel press fittings market to coerce wholesalers not to purchase copper press fittings from its competitors.

62.    Viega has unlawfully tied the sale of its copper press fittings to the sale of its carbon steel press fittings. That is, Viega has required wholesalers who want to purchase Viega's carbon steel press fittings to also purchase copper press fittings from Viega and not to purchase or stock copper press fittings from its competitors.

63.    In other instances, Viega has charged a pricing penalty in the form of premium prices or lost multiplier discounts for its carbon steel press fittings if the

wholesaler purchases copper press fittings from a competitor. This pricing penalty forces customers to purchase Viega's copper press fittings because the combined purchase becomes the only economically viable option available to the customer.

64.   Viega's conduct has denied its competitors free access to the relevant market for the sale of copper press fittings, not because Viega has a better product or lower price, but because of its market power in the market for carbon steel press fittings. Wholesalers are forced to forego their free choice and pay higher prices. In turn the wholesalers pass on, all or in part, the pricing above competitive levels to their customers, that is, plumbers, contractors and other end users of copper press fittings in the proposed state Class. The latter are also denied of freedom of choice when dealing with the wholesalers.

65.   Viega's anticompetitive conduct directly targets NIBCO, which is Viega's only significant competitor in the market for copper press fittings. When Viega representatives have threatened wholesalers, they have explicitly stated that the wholesaler must not purchase copper press fittings from NIBCO.

66.   As a result of Viega's conduct, NIBCO and other Viega competitors have lost existing and potential distributors for its copper press fittings, including, but not limited to, R.F Fager Company selling in this District, Weinstein Supply Company, Moore Supply Company, Mid-City Supply Co., Inc., AmericanPipe & Supply Company, Charles D. Sheehy, Inc., Peabody Supply Company, and Western

16

Nevada Supply.

### A.   R.F. Fager Company

67.   R.F. Fager is a wholesale distributor selling in part plumbing, heating, and cooling products from five locations in central Pennsylvania including Harrisburg, PA, Hanover, PA, Carlisle, PA, Camp Hill, PA and York, PA. Viega has refused to sell to Fager its carbon steel press fittings if Fager continued to sell copper press fittings manufactured by NIBCO.

### B.   Weinstein Supply Company

68.   Weinstein Supply Company ("Weinstein") is a wholesale distributor selling plumbing, heating and air conditioning products throughout the Northeast of the United States. Weinstein is a division of Hajoca Corporation, which is a wholesale distributor of plumbing, heating, and industrial supplies.

69.   In 2015, Weinstein's branch in Lansdowne, Pennsylvania converted from Viega to NIBCO's copper press fittings. Thereafter, one of Weinstein's customers required carbon steel press fittings for multiple projects. To satisfy the customer's request, Weinstein approached Viega to purchase its carbon steel press fittings. In response, Viega informed Weinstein's purchasing manager that its carbon steel press fittings were available only if Weinstein switched back to Viega's copper press fittings. Weinstein had no choice but to switch back to Viega's copper press fittings and stop selling NIBCO's copper press fittings.

70.    Because of Viega's conduct, NIBCO has lost sales of copper press fittings to Weinstein in an amount to be determined at trial.

**C.    Moore Supply Company**

71.    Moore Supply Company ("Moore Supply") is a wholesale distributor of plumbing products, pipe valves, and fittings for residential, commercial, and Industrial construction. It has locations throughout Texas. It is a sister company to Hajoca Corporation.

72.    In 2016, several branches of Moore Supply decided to convert to NIBCO copper press fittings. After some branches purchased copper press fittings from NIBCO, Viega threatened to pull its carbon steel press fittings from those branches. As a result, Moore Supply reversed its decision to purchase copper press fittings from NIBCO.

73.    Multiple branch managers informed NIBCO that Moore Supply had no choice but to purchase from Viega because of the possibility of losing Viega's carbon steel press fittings.

74.    Another incident involving Moore Supply occurred in the Dallas-Fort Worth area, where two Moore Supply branches purchased carbon steel press fittings and copper press fittings from Viega, and three different branches purchased copper press fittings from NIBCO. The branches supporting NIBCO's copper press fittings would purchase Viega's carbon steel press fittings from its sister branches.

75.   In response, Viega threatened to pull its carbon steel press fittings unless all of the branches (including those already purchasing from NIBCO) also purchased copper press fittings from Viega. As a result, Moore Supply stopped ordering copper press fittings from NIBCO.

76.   Because of Viega's conduct, NIBCO has lost sales of copper press fittings to Moore Supply in amount to be determined at trial.

**D.    Mid-City Supply Co., Inc.**

77.   Mid-City Supply Co., Inc. ("Mid-City") is a family-owned wholesale distributor that sells plumbing, HVAC, refrigeration, pipes, valves and fittings ("PVF"), and industrial products. Mid-City's central distribution center is located in Elkhart, Indiana. It also has branch offices in parts of Indiana and Michigan.

78.   Mid-City purchased copper press fittings from NIBCO until 2015. Mid-City converted to Viega's copper press fittings because Viega would not sell its carbon steel press fittings unless Mid-City agreed to drop NIBCO's copper press fittings from its inventory. Although Mid-City wanted to continue purchasing copper press fitting from NIBCO, it switched because of Viega's threat to withhold its carbon steel press fittings.

79.   Because of Viega's conduct, NIBCO has lost sales of copper press fittings to Mid-City in an amount to be determined at trial.

**E.    American Pipe & Supply Company**

80.     American Pipe & Supply Company ("American Pipe") is a wholesale distributor located in Birmingham, Alabama. It sells pipe, valves and fittings, plumbing fixtures, and fire.

81.     In or about 2015, American Pipe stopped purchasing NIBCO's copper press fittings. Customers were asking American Pipe for carbon steel press fittings and Viega required American Pipe to drop NIBCO's copper press fittings and buy only Viega's copper press fittings before it could purchase carbon steel press fittings from Viega.

82.     Because of Viega's conduct, NIBCO has lost sales of copper press fittings to American Pipe in an amount to be determined at trial.

**F.     Charles D. Sheehy, Inc.**

83.     Charles D. Sheehy, Inc. ("Sheehy, Inc.") is an independent wholesale distributor located in Avon, Massachusetts. It sells pipe, valves, fittings and mechanical equipment to the mechanical contracting industry of New England.

84.     In or about 2015, Viega shutdown one of its plants because of a fire. As a result, Sheehy, Inc. started purchasing copper press fittings from NIBCO. Approximately six months later, one of Sheehy, Inc.'s customers required carbon steel press fittings for a project. As a result, Sheehy, Inc. asked Viega about the availability of its carbon steel press fittings.

85.     In response, Viega told Sheehy, Inc. that it had to drop NIBCO's copper

press fittings to purchase Viega's carbon steel press fittings. Although Sheehy, Inc. wanted to continue purchasing NIBCO's copper press fittings, it had no choice but to drop NIBCO to access the carbon steel press fittings for its customer. Because of Viega's conduct, NIBCO has lost sales of copper press fittings to Sheehy, Inc. in an amount to be determined at trial.

### G.    Peabody Supply Company

86.    Peabody Supply Company ("Peabody") is a wholesale distributor of plumbing products, pipe valves, and fittings. It has locations throughout Massachusetts. It is a division of the Hajoca Corporation.

87.    Approximately six months ago, a Viega representative walked into one of Peabody's branch locations and conducted an inventory check. The purpose of the inventory check was to monitor the products being carried by Peabody.

88.    During the encounter, the Viega representative told Peabody personnel that Viega would pull its carbon steel press fittings line from all of Peabody's branches if any of them stocked NIBCO's copper press fittings. As a result, Peabody had no choice but to stop purchasing copper press fittings from NIBCO.

89.    Because of Viega's conduct, NIBCO has lost sales of copper press fittings to Peabody in an amount to be determined at trial.

### H.    Western Nevada Supply

90.    Western Nevada Supply ("WNS") is a wholesale distributor that offers

21

a diverse line of products including plumbing, water works, HVAC, PVF, Irrigation, and Hydronics & Solar. It has locations in Nevada and California.

91.    Approximately two years ago, WNS stocked NIBCO copper press fittings. Viega required WNS to drop NIBCO's copper press fittings and buy only Viega's copper press fittings before WNS could purchase carbon steel press fittings from Viega. As a result, WNS was forced to stop purchasing copper press fittings from NIBCO so that it could obtain Viega's carbon steel press fittings.

92.    Because of Viega's conduct, NIBCO has lost sales of copper press fittings to WNS in an amount to be determined at trial.

## INJURY TO COMPETITION

93.    Viega's tying has restrained trade, injured competition and has preserved and entrenched Viega's market power in the relevant market for the sale of copper press fittings. The injury to competition has caused injury to its competitors, as well as antitrust price injury for its wholesalers which is passed on, all or in part, to their end user customers in the form of above-competitive pricing. The tying has also denied both wholesalers and their end user customers freedom of competitive choice.

94.    There are no legitimate business or pro-competitive justifications for Viega's conduct and any purported legitimate business justifications are mere pretexts. There is no legitimate business reason to prevent copper press fittings and

carbon steel press fittings from being sold separately. Even if such a justification existed, any purported pro-competitive benefits can be achieved through alternative means less restrictive of competition.

95.    Viega's unlawful conduct and resulting injury to competition will continue unless injunctive and equitable relief is granted.

## FEDERAL INJUNCTIVE CLASS

96.    Injunctive claims under the Sherman and Clayton Acts are prosecuted by a Class of Indirect Purchasers of Viega Copper Press Fittings ("Federal Indirect-Purchaser Injunctive Class") under Fed. R. Civ. P. 23(a) and 23(b)(2) encompassing:

> All United States indirect purchasers of copper press fittings manufactured by Viega LLC sold through Viega's wholesale distributors from January 29, 2015 through the present ("Class Period").

### Rule 23(a) Prerequisites

97.    Prosecution of the claims of the Class as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a)    The number of persons in the Class is in the thousands, and the members of the Class are therefore so numerous that joinder of all members of the Class is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Class, the need to expedite judicial

relief, and the Class Representative's lack of knowledge of the identity and addresses of all members of the Class.

(b)    There are numerous questions of law and fact arising from Viega's restraint of trade which are common to the members of the Class. These include, but are not limited to, common issues as to (1) whether the Defendant has engaged in a tying, restraint of trade or monopolization; and (2) whether this conduct, taken as a whole, has materially caused continuing and threatened antitrust price injury to be inflicted on indirect purchasers in the Class, as well as denial of free competitive choice.

98.    The claims of the Class Representative are typical of the claims of the members of the Class and fairly encompass the claims of the members of the Class. The Class Representative and the members of the Class are similarly or identically harmed by the same systematic and pervasive concerted action.

99.    The Class Representative and the Representative's counsel will fairly and adequately protect the interests of the members of the Class. There are no material conflicts between the claims of each Class Representative and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of the Class Representative and the other members of the Class.

## Rule 23(b)(2) Prerequisites

100.   The prosecution of the claims of the Class as a class action pursuant to Rule 23(b)(2) is appropriate because Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, for the Class as a whole.

## FEDERAL INJUNCTIVE CLAIMS

## COUNT I

## (Tying – Sherman Act § 1 and Clayton Act § 3)

101.   Plaintiff incorporates its allegations in paragraphs 1-100 fully herein.

102.   Viega has engaged in an unlawful tying scheme in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

103.   Viega has tied the sale of its carbon steel press fittings (the tying product) to the purchase of its copper press fittings (the tied product) by (a) withholding its carbon steel press fittings altogether unless the wholesaler agrees to purchase Viega's copper press fittings, or (b) requiring the wholesaler to pay higher prices for carbon steel press fittings if it purchases copper press fittings from any firm other than Viega, thus making tied purchases the only viable economic option.

104.   Copper press fittings and carbon steel press fittings are separate and distinct products sold in distinct relevant markets and are used for different

applications and are not functionally interchangeable. The product characteristics, uses and character of copper press fittings – which are used with copper pipes for potable, hot, chilled and process water applications for plumbing and HVAC systems – are different from the product characteristics, uses and the character of demand for carbon steel press fittings – which may be used with black iron pipes for fuel oil and fuel gas installations.

105.   At all times relevant to this action, Viega has had market power in the relevant market for the sale of carbon steel press fittings in the United States. Viega controls at least 95% of the carbon steel press fittings market. Moreover, there are high barriers to entry in the market for carbon steel press fittings, including both technological and regulatory barriers.

106.   Viega uses its market power in the carbon steel press fittings market to coerce wholesalers to purchase Viega's copper press fittings at above-competitive prices which are then passed on, all or in part, to their end user customers such as Plaintiff and members of the proposed state damage Class.

107.   Viega's conduct has stifled competition on the merits in the relevant market for copper press fittings.

108.   The amount of interstate commerce affected by Viega's tying scheme is not insubstantial. *Supra* ¶¶ 21-22.

109.   Viega's conduct in conditioning the sale of its carbon steel press fittings

on the purchase of its copper press fittings constitutes an illegal tying agreement and is a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14) or, in the alternative, is unlawful under the rule of reason, in that any purported pro-competitive justification for the tie is substantially outweighed by the anticompetitive effects in the copper press fittings market.

110.    There are no legitimate business or pro-competitive justifications for Viega's conduct and any purported legitimate business justifications are mere pretexts. Even if such a justification existed, any purported pro-competitive benefits can be achieved through alternative means less restrictive of competition.

111.    If not enjoined, Viega will continue to engage in anticompetitive conduct that will further injure competition, competitors, and end users in the proposed Class.

112.    As a substantial, proximate and immediate result of Viega's anticompetitive and unlawful actions, Plaintiff and members of the proposed federal injunctive Class have been injured in their business or property and continue to be threatened by such harm.

113.    Plaintiff and members of the proposed federal injunctive Class seek an injunction prohibiting the Defendant's anticompetitive practices pursuant to Clayton Act § 16, 15 U.S.C. § 26.

## COUNT II

### (Restraint of Trade – Sherman Act § 1)

114.   Plaintiff incorporates its allegations in paragraphs 1-112 fully herein.

115.   At all times relevant to this action, Viega had market power in the relevant market for the sale of copper press fittings in the United States. Viega controls approximately 71% of the copper press fittings market in the United States. Moreover, there are high barriers to entry in the market for copper press fittings, including both technological and regulatory barriers.

116.   Viega has forced wholesalers into agreements that prohibit them from purchasing copper press fittings from its competitors if they wish to purchase Viega's carbon steel press fittings.

117.   Viega's conduct constitutes an unlawful contract in restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

118.   The purpose and effect of the conduct has been to diminish, eliminate, and exclude competition.

119.   Through its unlawful contracts, Viega has injured competition by forcing wholesalers to pay above–competitive pricing and by denying them freedom of competitive choice. It has also injured Plaintiff and other members of the proposed federal injunctive Class who have paid above-competitive pricing passed on by wholesalers all or in part and been denied freedom of competitive choice.

120.   There are no legitimate business or pro-competitive justifications for Viega's conduct and any purported legitimate business justifications are mere pretexts. Even if such a justification existed, any purported pro-competitive benefits can be achieved through alternative means less restrictive of competition.

121.   If not enjoined, Viega will continue to engage in anticompetitive conduct that threatens competitive injury to the business or property of members of the in the proposed federal injunctive Class.

122.   Plaintiff and members of the proposed federal injunctive Class seek an injunction prohibiting the Defendant's anticompetitive practices.

## COUNT III

### (Monopolization – Sherman Act § 2)

123.   Plaintiff incorporates its allegations in paragraphs 1-121 fully herein.

124.   At all times relevant to this action Viega has had market power in the relevant market for the sale of copper press fittings in the United States. Viega controls approximately 71% of this market, a share protected by cost, technological and regulatory barriers to entry.

125.   Viega has engaged in exclusionary conduct designed to prevent competition on the merits in the relevant market for the sale of copper press fittings to maintain and enhance its monopoly position in that market.

126.   Viega's anticompetitive conduct has decreased price competition in the

relevant market for the sale of copper press fittings market and imposed antitrust price injury on wholesalers and their end user customers in the proposed federal injunctive Class, as well as denying them free competitive choice.

127.   There are no legitimate business or pro-competitive justifications for Viega's conduct and any purported legitimate business justifications are mere pretexts. Even if such a justification existed, any purported pro-competitive benefits can be achieved through alternative means less restrictive of competition.

128.   If not enjoined, Viega will continue to engage in anticompetitive conduct that will further injure competition, competitors, wholesalers, and end users in the proposed federal injunctive Class. Members of this Class seek an injunction prohibiting Defendant's continuing and threatened anticompetitive practices.

## STATE DAMAGE CLAIMS

129.   Plaintiff incorporates its allegations in paragraphs 1-128 fully herein.

130.   Pursuant to this Court's supplemental jurisdiction Plaintiff and the proposed Class also seek damages under state antitrust statutes in 26 states and the District of Columbia which accord damage remedy to indirect purchasers of Viega copper press fittings suffering passed-on antitrust price injury due to Viega's unlawful conduct ("Indirect-Purchaser Jurisdictions").

## STATE INDIRECT-PURCHASER DAMAGE CLASS

131.   These claims are prosecuted by a Class of Indirect Purchasers of Viega

Copper Press Fittings ("State Indirect-Purchaser Damage Class") under Fed. R. Civ.

P. 23(a) and 23(b)(3) encompassing:

> All indirect purchasers of copper press fittings manufactured by Viega LLC and sold through its wholesale distributors located in the State Indirect Purchaser Jurisdictions from January 29, 2015 through the present ("Class Period"). The Class is organized into Subclasses according to the Indirect-Purchaser Jurisdiction specified below.

### Rule 23(a) Prerequisites

132.   Prosecution of the claims of the Class and its Sub-Classes as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a)   The number of persons in the Class and is in the thousands, and the members of the Class are therefore so numerous that joinder of all members of the Class is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Class, the need to expedite judicial relief, and the Class Representative's lack of knowledge of the identity and addresses of all members of the Class.

(b)   There are numerous questions of law and fact arising from Viega's restraint of trade which are common to the members of the Class. These include, but are not limited to, common issues as to (1) whether the Defendant has engaged in tying, restraint of trade, or monopolization in the Indirect Purchaser Jurisdictions; and (2) whether this conduct, taken as a

whole, has materially caused antitrust price injury to be inflicted indirectly on members of the Class.

133.   The claims of the Class Representative are typical of the claims of the members of the Class and fairly encompass the claims of the members of the Class. The Class Representative and the members of the Class are similarly or identically harmed by the same systematic and pervasive concerted action.

134.   The Class Representative and the Representative's counsel will fairly and adequately protect the interests of the members of the Class. There are no material conflicts between the claims of each Class Representative and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of the Class Representative and the other members of the Class.

### Rule 23(b)(3) Prerequisites

135.   In addition, the prosecution of the claims of the Class as a class action pursuant to Rule 23(b)(3) is appropriate because:

(a)   Questions of law or fact common to the members of the Class predominate over any questions affecting only its individual members; and

(b)   A class action is superior to other methods for the fair and efficient resolution of the controversy.

136.   As to the following counts, Plaintiff incorporates its allegations in

paragraphs 134 fully herein.

## COUNT IV

### (Alabama Code §§ 6-5-60 et seq.)

137.   Defendant has restrained trade and monopolized in violation of the Alabama Code. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of  Defendant's copper press fittings to wholesalers and end users has been restrained throughout Alabama; (2) as a consequence prices paid by both have been at above-competitive levels throughout Alabama; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Alabama commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Alabama Code § 6-5-60 et seq.

## COUNT V

### (Arizona Rev. Stat. §§ 44-1401 et seq.)

138.   Defendant has restrained trade and monopolized in violation of the
Arizona Revised Statutes. In part Defendant's exclusionary conduct has had the
following effects: (1) competition for the sale of Defendant's copper press fittings
to wholesalers and end users has been restrained throughout Arizona; (2) as a
consequence prices paid by both have been at above-competitive levels throughout
Arizona; (3) members of the proposed Indirect-Purchaser Damage Class have been
deprived of free and competitive choice; and (4) members of the proposed Indirect-
Purchaser Damage Class indirectly have paid above-competitive prices due to the
pass on by wholesalers all or in part of their antitrust price injury materially caused
by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal
conduct has substantially affected Arizona commerce. As a direct and proximate
result of Defendant's unlawful conduct, Plaintiff and members of the proposed
Indirect-Purchaser Damage Class have been injured in their business and property
and are threatened with further injury. Accordingly, Plaintiff and members of the
Indirect-Purchaser Damage Class seek all forms of relief available under Arizona
Revised Statutes § 44-1401 et seq.

## COUNT VI

### (California Business and Professions Code §§ 16720, 16750)

139.   Defendant has restrained trade and monopolized in violation of the California Business and Professions Code. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout California; (2) as a consequence prices paid by both have been at above-competitive levels throughout California; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected California commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under California Business and Professions Code §§ 16720, 16750(a).

## COUNT VII

**(District of Columbia Code Ann. §§ 28-4501 se seq.)**

140.     Defendant has restrained trade and monopolized in violation of the District of Columbia Code. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout the District of Columbia; (2) as a consequence prices paid by both have been at above-competitive levels throughout the District of Columbia; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected District of Columbia commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under District of Columbia Code Annotated § 28-4501 et seq.

## COUNT VIII

### (Hawaii Rev. Stat. Ann. §§ 480-1 et seq.)

141.   Defendant has restrained trade and monopolized in violation of the Hawaii Code Revised Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Hawaii; (2) as a consequence prices paid by both have been at above-competitive levels throughout Hawaii; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Hawaii commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Hawaii Revised Statutes Annotated § 480-1 et seq.

## COUNT IX

### (Illinois Antitrust Act, 740 Ill. Compiled Stat. §§10/1 et seq.)

142.   Defendant has restrained trade and monopolized in violation of the Illinois Antitrust Act. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Illinois; (2) as a consequence prices paid by both have been at above-competitive levels throughout Illinois; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Illinois commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq.*).

## COUNT X

### (Iowa Code §§ 553.1 et seq.)

143.   Defendant has restrained trade and monopolized in violation of the Iowa Code. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Iowa; (2) as a consequence prices paid by both have been at above-competitive levels throughout Iowa; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Iowa commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Iowa Code § 553.1 et seq.

## COUNT XI

### (Kansas Stat. Ann. §§ 50-101 et seq.)

144.   Defendant has restrained trade and monopolized in violation of the Kansas Statutes Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Kansas; (2) as a consequence prices paid by both have been at above-competitive levels throughout Kansas; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Kansas commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Kansas Statutes Annotated § 50-101 et seq.

## COUNT XII

### (Maine Rev. Stat. Ann. 10 §§ 1101 et seq.)

145.   Defendant has restrained trade and monopolized in violation of the Maine Revised Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Maine; (2) as a consequence prices paid by both have been at above-competitive levels throughout Maine; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially Maine commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Maine Rev. Stat. Ann. 10 § 1101 et seq.

## COUNT XIII

## (Michigan Compiled Laws Ann. §§ 445.771 et seq.

146.   Defendant has restrained trade and monopolized in violation of the Michigan Compiled Laws Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Michigan; (2) as a consequence prices paid by both have been at above-competitive levels throughout Michigan; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Michigan commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Michigan Compiled Laws Annotated § 445.771 et seq.

## COUNT XIV

## (Minnesota Ann. Stat. §§ 325D.49 et seq.)

147.   Defendant has restrained trade and monopolized in violation of the Minnesota Annotated Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Minnesota; (2) as a consequence prices paid by both have been at above-competitive levels throughout Minnesota; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Minnesota commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Minnesota Annotated Statutes § 325D.49 et seq.

## COUNT XV

## (Mississippi Code Ann. §§ 75-21-1 et seq.)

148.   Defendant has restrained trade and monopolized in violation of Mississippi Code Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Mississippi; (2) as a consequence prices paid by both have been at above-competitive levels throughout Mississippi; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Mississippi commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Mississippi Code Annotated § 75-21-1 et seq.

## COUNT XVI

### (Nebraska Rev. Stat. §§ 59-801 et seq.)

149.   Defendant has restrained trade and monopolized in violation of Nebraska Revised Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Nebraska; (2) as a consequence prices paid by both have been at above-competitive levels throughout Nebraska; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Nebraska commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Nebraska Revised Statutes § 59-801 et seq.

## COUNT XVII

### (Nevada Rev. Stat. Ann. §§ 598A.010 et seq.)

150.   Defendant has restrained trade and monopolized in violation of the Nevada Revised Statutes Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Nevada; (2) as a consequence prices paid by both have been at above-competitive levels throughout Nevada; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Nevada commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Nevada Revised Statutes Annotated § 598A.010 et seq.

## COUNT XVIII

### (New Hampshire Rev. Stat. §§ 356:1 et seq.)

151.    Defendant has restrained trade and monopolized in violation of the New Hampshire Revised Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout New Hampshire; (2) as a consequence prices paid by both have been at above-competitive levels throughout New Hampshire; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected New Hampshire commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under New Hampshire Revised Statutes § 356:1 et seq.

## COUNT XIX

### (New Mexico Stat. Ann. §§ 57-1-1 et seq.)

152.    Defendant has restrained trade and monopolized in violation of the New Mexico Statutes Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout New Mexico; (2) as a consequence prices paid by both have been at above-competitive levels throughout New Mexico; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected New Mexico commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under New Mexico Statutes Annotated § 57-1-1 et seq.

# COUNT XX

## (The Donnelly Act, New York General Bus. Law §§ 340 et seq.)

153.   Defendant has restrained trade and monopolized in violation of the New York Donnelly Act. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout New York; (2) as a consequence prices paid by both have been at above-competitive levels throughout New York; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected New York commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under The Donnelly Act, New York General Bus. Law § 340 et seq.

## COUNT XXI

### (North Carolina General Stat. §§ 75-1 et seq.)

154.    Defendant has restrained trade and monopolized in violation of the North Carolina General Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout North Carolina; (2) as a consequence prices paid by both have been at above-competitive levels throughout North Carolina; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected North Carolina commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under North Carolina General Statutes § 75-1 et seq.

## COUNT XXII

### (North Dakota Century Code §§ 51-08.01 et seq.)

155.   Defendant has restrained trade and monopolized in violation of the North Dakota Century Code. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout North Dakota; (2) as a consequence prices paid by both have been at above-competitive levels throughout North Dakota; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected North Dakota commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under North Dakota Century Code § 51-08.1-01 et seq.

## COUNT XXIII

### (Oregon Revised Statutes §§ 646.705 et seq.)

156.   Defendant has restrained trade and monopolized in violation of the Oregon Revised Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Oregon; (2) as a consequence prices paid by both have been at above-competitive levels throughout Oregon; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Oregon commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Oregon Revised Statutes § 646.705 et seq.

## COUNT XXIV

### (Rhode Island Antitrust Act, Rhode Island Gen. Laws §§ 6-36-1 et seq.)

157.    Defendant has restrained trade and monopolized in violation of the Rhode Island Antitrust Act. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Rhode Island; (2) as a consequence prices paid by both have been at above-competitive levels throughout Rhode Island; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Rhode Island commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under the Rhode Island Antitrust Act, Rhode Island Gen. Laws § 6-36-1 et seq.

## COUNT XXV

### (South Dakota Codified Laws §§ 37-1-3.1 et seq.)

158.   Defendant has restrained trade and monopolized in violation of the South Dakota Codified Laws.  In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout South Dakota; (2) as a consequence prices paid by both have been at above-competitive levels throughout South Dakota; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct.  During the Class Period Defendant's illegal conduct has substantially affected South Dakota commerce.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury.  Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under South Dakota Codified Laws § 37-1-3.1 et seq.

## COUNT XXVI

### (Tennessee Code Ann. §§ 47-25-101 et seq.)

159.    Defendant has restrained trade and monopolized in violation of the Tennessee Code Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Tennessee; (2) as a consequence prices paid by both have been at above-competitive levels throughout Tennessee; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Tennessee commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Tennessee Code Annotated § 47-25-101 et seq.

## COUNT XXVII

### (Utah Code Ann. §§ 76-10-3101 et seq.)

160.    Defendant has restrained trade and monopolized in violation of the Utah Code Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Utah; (2) as a consequence prices paid by both have been at above-competitive levels throughout Utah; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Utah commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Utah Code Annotated § 76-10-3101 et seq.

## COUNT XXVIII

### (Vermont Stat. Ann. §§ 2453 et seq.)

161.   Defendant has restrained trade and monopolized in violation of the Vermont Statutes Annotated. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Vermont; (2) as a consequence prices paid by both have been at above-competitive levels throughout Vermont; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Vermont commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Vermont Stat. Ann. 9 § 2453 et seq.

**COUNT XXIX**

**(West Virginia Code §§ 47-18-1 et seq.)**

162.   Defendant has restrained trade and monopolized in violation of the West Virginia Code. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout West Virgina; (2) as a consequence prices paid by both have been at above-competitive levels throughout West Virgina; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected West Virginia commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under West Virginia Code § 47-18-1 et seq.

## COUNT XXX

## (Wisconsin Stat. §§ 133.01 et seq.)

163.    Defendant has restrained trade and monopolized in violation of the Wisconsin Statutes. In part Defendant's exclusionary conduct has had the following effects: (1) competition for the sale of Defendant's copper press fittings to wholesalers and end users has been restrained throughout Wisconsin; (2) as a consequence prices paid by both have been at above-competitive levels throughout Wisconsin; (3) members of the proposed Indirect-Purchaser Damage Class have been deprived of free and competitive choice; and (4) members of the proposed Indirect-Purchaser Damage Class indirectly have paid above-competitive prices due to the pass on by wholesalers all or in part of their antitrust price injury materially caused by Defendant's anticompetitive conduct. During the Class Period Defendant's illegal conduct has substantially affected Wisconsin commerce. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the proposed Indirect-Purchaser Damage Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiff and members of the Indirect-Purchaser Damage Class seek all forms of relief available under Wisconsin Stat. § 133.01 et seq.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and as a member of the proposed Federal Indirect-Purchaser Injunctive Class and the State Indirect-Purchaser Damage Class pray that:

A.      This Court find that Defendant's conduct constitutes violations of the Sherman Act, 15 U.S.C. §§ 1, 2 and the Clayton Act, 15 U.S.C. § 14.

B.      This Court award injunctive relief to the proposed injunctive Class under Section 16 of the of the Clayton Act., 15 U.S.C. § 26, and award damage relief to the proposed damage Class in the Indirect-Purchaser Jurisdictions pursuant to its supplemental jurisdiction;

C.      Plaintiff recover reasonable attorneys' fees and costs as allowed by law;

D.      Plaintiff recover pre-judgment and post-judgment interest at the highest rate allowed by law; and

E.      Plaintiff be granted such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 29, 2019

Respectfully submitted,

BY: /s/ Michael D. Reed
**METTE EVANS & WOODSIDE**
PA Bar No. 35193
Veronica L. Boyer
PA Bar No. 310095
3401 North Front Street
Harrisburg, PA 17110
Telephone: (717) 232-5000
Fax: (717) 236-1816
mdreed@mette.com
vlboyer@mette.com

**BERRY LAW PLLC**
R. Stephen Berry
PA Bar No. 22418
*(pro hac vice petition forthcoming)*
1100 Connecticut Avenue, N.W.
Suite 645
Washington, D.C. 20006
Telephone: (202) 296-3020
Fax: (202) 296-3038
sberry@berrylawpllc.com

**MCKOOL SMITH**
Lewis T. LeClair
*(pro hac vic*e petition forthcoming)
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044
lleclair@mckoolsmith.com

**Attorneys for Plaintiff**