# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| AL'S DISCOUNT PLUMBING; ACCURATE BACKFLOW AND PLUMBING SERVICES, INC.; HOMESTEAD HEATING & PLUMBING, LLC; AIRIC'S HEATING & AIR CONDITIONING, INC.; PRIME SOURCE PLUMBING & HEATING CORP.; RYAN PLUMBING, INC.; MAZZOLA PLUMBING HEATING & GAS FITTING, INC.; SOUTH SHORE HEATING AND PLUMBING, INC.; ALL KNIGHT PLUMBING, HEATING AND AIR CONDITIONING, INC.; PLUMB PERFECTION, LLC, individually and on behalf of all others similarly situated, | Case No: 19-cv-00159<br><br>Honorable Christopher C. Conner<br><br><br>Electronically Filed |
| Plaintiffs, | |
| v. | |
| VIEGA LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES,
## <u>REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS</u>

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................ ii

I.     INTRODUCTION ..................................................................1

II.    ARGUMENT........................................................................3

       A.    Counsel Are Entitled To A Common Benefit Fee ................................3

       B.    The Requested Percentage Fee Is Reasonable ....................................5

             1.    Given the Size of the Fund and the Number of Persons  Who will Benefit, Counsel's Fee Request is Reasonable...................5

             2.    The Reaction of the Class to the Fee Request ...........................6

             3.    Class Counsel Prosecuted this Matter with Skill and Efficiency ................................................................7

             4.    The Complexity and Duration of the Litigation ........................8

             5.    The Amount of Time Devoted to the Case by  Class Counsel and the Risk of Nonpayment.......................................9

             6.    The Fee Request is Fair and Reasonable When Compared to the Awards in Similar Cases ...........................................10

III.   CLASS COUNSEL'S OUT-OF-POCKET  EXPENSES SHOULD BE REIMBURSED...........................................................................12

IV.    THE PROPOSED SERVICE AWARDS ARE REASONABLE .................13

V.     CONCLUSION....................................................................14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abrams v. Lightolier Inc.,*
   50 F.3d 1204 (3d Cir. 1995)..................................................................................12

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
   263 F.R.D. 226 (E.D. Pa. 2009)..................................................................4, 7, 8

*In re AremisSoft Corp. Sec. Litig.,*
   210 F.R.D. 109 (D.N.J. 2002)..............................................................................12

*In re Aetna Inc. Sec. Litig.,*
   MDL. 1219,  2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001).......................12

*In re AT&T Corp. Sec. Litig.,*
   455 F.3d 160 (3d Cir. 2006)...........................................................................*passim*

*Blum v. Stenson,*
   465 U.S. 886 (1984)................................................................................................4

*Bradburn Parent Teacher Store, Inc. v. 3M,*
   513 F. Supp. 2d 322 (E.D. Pa. 2007)...................................................................11

*Clarke v. Flik Int'l Corp.,*
   No. 17-1915 (SRC),
   2020 U.S. Dist. LEXIS 26306 (D.N.J. Feb. 14, 2020).......................................10

*In re Corel Corp. Sec. Litig.,*
   293 F. Supp. 2d 484 (E.D. Pa. 2003)...................................................................10

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980)................................................................................................3

*Gasper v. Collective,*
   No. 19-2676, 2020 U.S. Dist. LEXIS 182617 (E.D. Pa. Oct. 2, 2020)................8

*Gunter v. Ridgewood Energy Corp.,*
  223 F.3d 190 (3d Cir. 2000)..................................................................................4, 5

*Hall v. AT&T Mobility LLC,*
  No. 07-5325 (JLL),
  2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) ...........................9, 10, 11

*Ingram v. Coca-Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001)..........................................................................13

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. 2009).................................................................................5

*James v. Glob. Tel*Link Corp.,*
  No. 2:13-cv-04989-WJM-MF,
  2020 U.S. Dist. LEXIS 196916 (D.N.J. Oct. 20, 2020) ......................................12

*In re Lamictal Direct Purchaser Antitrust Litig.,*
  957 F.3d 184 (3d Cir. 2020)................................................................................10

*Martin v. Foster Wheeler Energy Corp.,*
  No. 3:06-CV-0878,
  2008 U.S. Dist. LEXIS 25712 (M.D. Pa. Mar. 31, 2008) ...................................12

*Mejia v. KVK-Tech, Inc.,*
  No. 2:19-cv-04841-JDW,
  2020 U.S. Dist. LEXIS 162235 (E.D. Pa. Sept. 4, 2020) ...................................14

*Milliron v. T-Mobile USA, Inc.,*
  No. 08-4149 (JLL),
  2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) ................................7, 10

*Missouri v. Jenkins,*
  491 U.S. 274 (1989)............................................................................................11

*In re NFL Players' Concussion Injury Litig.,*
  814 F. App'x 678 (3d Cir. 2020)..........................................................................5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
  No. 19-56514, 2020 U.S. App. LEXIS 18779 (9th Cir. June 15, 2020) .............10

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
  478 U.S. 546 (1986) ..................................................................................4

*Polonski v. Trump Taj Mahal Assocs.,*
  137 F.3d 139 (3d Cir. 1998) .......................................................................3

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ...............................................................4, 11

*In re Ravisent Techs., Inc. Sec. Litig.,*
  No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ..........12

*In re Remeron Direct Purchaser Antitrust Litig.,*
  No. 03-0085 (FSH), 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) ........10

*In re Rite Aid Corp. Sec. Litig.,*
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................12

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ....................................................5, 7, 11

*Rose v. Travelers Home & Marine Ins. Co.,*
  No. 19-977, 2020 U.S. Dist. LEXIS 126761 (E.D. Pa. July 20, 2020) ............6, 7

*In re Royal Dutch/Shell Transp. Sec. Litig.,*
  CA No. 04-374, 2008 U.S. Dist. LEXIS 124269 (D.N.J. Dec. 8, 2008) ..............7

*In re Safety Components Int'l Sec. Litig.,*
  166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................12

*Stevens v. SEI Invs. Co.,*
  No. 18-4205, 2020 U.S. Dist. LEXIS 35471 (E.D. Pa. Feb. 26, 2020) ..............10

*In re Vicuron Pharm., Inc. Sec. Litig.,*
  512 F. Supp. 2d 279 (E.D. Pa. 2007) ..................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005) ..................................................................4

*Wilson v. TA Operating, LLC*,
   No. 4:14-cv-00771, 2017 U.S. Dist. LEXIS 68136 (M.D. Pa. May 3, 2017) .......4

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................................8

## **Statutes & Rules**

Fed. R. Civ. P. Rule 23(h)............................................................................................1

## **Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Third) § 24.121 (1995).....................4

Plaintiffs Al's Discount Plumbing; Accurate Backflow And Plumbing Services, Inc.; Homestead Heating & Plumbing, LLC; Airic's Heating & Air Conditioning, Inc.; Prime Source Plumbing & Heating Corp.; Ryan Plumbing, Inc.; Mazzola Plumbing Heating & Gas Fitting, Inc.; All Knight Plumbing, Heating And Air Conditioning, Inc.; and Plumb Perfection, LLC ("Plaintiffs") respectfully submit this memorandum of law in support of their motion under Rule 23(h) for an award of attorneys' fees of 27.5% of the $15 million Settlement Fund,[1] which is comprised of the $10 million cash settlement fund, and the $5 million rebate program.  Plaintiffs also move for reimbursement of expenses incurred in the prosecution of this class action in the amount of $52,932.36, and for service awards of $2000 for each class representative.[2]

I.  **INTRODUCTION**

As discussed in the accompany Settlement Memorandum and Declaration of Thomas Burt ("Burt Decl.") and Pritzker Declaration, a proposed settlement has been reached in this litigation, which will provide for cash payments to Class Members in two forms, a cash settlement fund of $10 million, and a cash rebate program of $5 million, for total compensation to the Class of $15 million.

As compensation for their successful efforts on behalf of the Settlement Class, Interim Settlement Class Counsel ("Counsel") respectfully request an award

---

[1]  Capitalized terms in this memorandum of law are defined in the Settlement Agreement (Docket No. 134) and have the same meaning as set forth therein.

[2]  Also submitted herewith is the Declaration of Elizabeth C. Pritzker ("Pritzker Decl."), together with supporting declarations and documents attached thereto (the "Fee  Declarations"), and the Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Acton Settlement ("Settlement Memorandum").  Plaintiffs respectfully refer the Court to those documents for a more detailed discussion of the Settlement and the background and history of this litigation. The discussions in those submissions will be referred to herein.

of 27.5 % of the total Settlement monetary relief to the Class.  This amount would be paid from the Cash Settlement Fund of $10 million, as the rebate program is directly administered by Viega and is not available for disbursement of fees and awards.  The Notice of Settlement disseminated to the Class indicated that Class Counsel would seek up to $4.5 million in fees and expenses (that is, 30%).  The proposed awards of a 27.5% fee, $52,932.36 in litigation expenses, $2000 in service awards to each Plaintiff, and the notice and administration expenses of $260,273, total $4,456,205.36, less than the cap set forth in the Notice.

The requested fee represents a modest multiplier on Counsel's lodestar of 1.09.  Counsel's fee request is compensation for time and effort expended, risks undertaken, the quality and efficiency of service, and the excellent results achieved. Counsel also request reimbursement of litigation expenses of $52,932.36, which were reasonably and necessarily incurred in the prosecution of this Action.

Finally, Counsel respectfully request service awards in the amount of $2000 for each of the nine Plaintiffs for their contributions of time and efforts expended on behalf of the Settlement Class, a request supported by case law. It should be noted that each of the class plaintiffs is a licensed plumber who took time from his business to gather documents, answer and assist Counsel in the preparation of the case, as well as to prepare for and participate in depositions (except two Plaintiffs whose scheduled  depositions were canceled when the case settled.)

The Class Notice was directly disseminated to more than 88,000 Settlement Class Members. The Notice informed them that Counsel would seek an award of attorneys' fees and expenses up to $4.5 million, and an award to the named Plaintiffs of up to $2000 each.  The Class Notice was also published through social media with an estimated reach of over 86 million impressions, as well as on the settlement website (www.pressfittingssettlement.com) and in both print and digital

form in two industry magazines. *See* Declaration of Settlement Administrator, filed herewith ("Azari Decl.") at ¶¶ 19-28. The deadline for filing objections is November 30, 2020 (17 business days prior to the December 17, 2020 Fairness Hearing). To date ***only a single objection*** to any aspect of the Settlement has been filed. That objection was filed by a disbarred attorney, whose disbarment arose from dishonesty in connection with an objection to a class action settlement. Pritzker Decl., ¶ 54, Ex. K. Counsel is taking discovery from this objector, who is not a plumber, to determine if he a member of the Class. Only six requests for exclusion have been received. Class Counsel will supplement this brief after discovery of the lone objector, and address any further objections received, in the final reporting due on December 10, 2020.

For all the reasons set forth herein and in the Settlement Memorandum, Pritzker Declaration and Burt Declaration, Counsel respectfully submit that (1) the fees requested are fair and reasonable and should be awarded by the Court; (2) the expenses requested are reasonable and reimbursement should be approved; and (3) the request for service awards of a combined total of $2000 per Plaintiff should be approved.

## II. <u>ARGUMENT</u>

### A. **Counsel Are Entitled To A Common Benefit Fee**

Under the "common fund doctrine", counsel who represent a class and aid in the creation of a settlement fund are entitled to compensation from the fund. *See, e.g., Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Courts recognize that common fund awards encourage skilled counsel to represent classes of persons harmed, and to discourage future misconduct. *See, e.g., Deposit Guar. Nat'l Bank v. Ropes*, 445 U.S. 326, 338-39 (1980).

The percentage-of-recovery method, as opposed to the "lodestar" method,[3] is the prevailing method for awarding fees in the Third Circuit. *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 243 (E.D. Pa. 2009) (citing *In re Prudential Ins. Co. America Sales Prac. Litig.*, 148 F.3d 283, 333 (3d Cir. 1998));

In this Circuit, "a Plaintiffs' requested fee enjoys a presumption of reasonableness which can be rebutted only by a showing that it is, *prima facie*, clearly excessive." *See Wilson v. TA Operating, LLC*, No. 4:14-cv-00771, 2017 U.S. Dist. LEXIS 68136, at *6 (M.D. Pa. May 3, 2017) (A fee arrangement "enjoys a presumption of reasonableness[.]") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 283 (3d Cir. 2001); *AT&T*, 455 F.3d at 167-68). To determine whether the fee is reasonable, rather than "clearly excessive," courts look to the following seven factors as set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000):

1.     The size of the fund created and the number of persons benefitted;

2.     The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

---

[3]   Under the "lodestar" method, the hours billed in the case are multiplied by reasonable hourly rates. *Pa. v. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Where appropriate, the lodestar calculation may be enhanced by a "multiplier" to arrive at a reasonable fee. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Courts, however, have recognized three major drawbacks to the lodestar method: (1) it is unrelated to the benefit the class receives; (2) it discourages early settlements, and (3) it is unwieldy and a waste of judicial time and resources to sift through fee records. *See* MANUAL FOR COMPLEX LITIGATION (Third) § 24.121 at 189 (1995); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2004) ("lodestar create[s] an unanticipated disincentive to early settlements…).

3.      The skill and efficiency of the attorneys;

4.      The complexity and duration of the litigation;

5.      The risk of nonpayment;

6.      The amount of time devoted to the case by plaintiffs' counsel; and

7.      Awards in similar cases.

*Id.* at 195 n.2; *see also In re NFL Players' Concussion Injury Litig.,* 814 F. App'x 678, 682 (3d Cir. 2020)*(citing Gunter); AT&T,* 455 F.3d at 165 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005)).  This list is "not intended to be exhaustive," and "should not be applied in a formulaic way." *Id*. at 165-66.

Under these factors, the fee request of 27.5% of the Settlement Fund is reasonable, particularly given the risk taken by Counsel and the results obtained. The reasonableness of this award is strongly confirmed by a "lodestar cross-check." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009). The lodestar in this case is $3,797,023 (*see* Burt Decl., ¶ 20; Pritzker Decl., ¶ 40), meaning that Counsel are requesting a multiplier on their total lodestar of only 1.09.

### B.      The Requested Percentage Fee Is Reasonable

#### 1.      Given the Size of the Fund and the Number of Persons Who will Benefit, Counsel's Fee Request is Reasonable

The efforts of Class Counsel have resulted in a $15 million total monetary recovery for the Settlement Class, $10 million available for distribution upon valid claim, and $5 million more in cash rebates to the Class Members for purchases over a future period of approximately one year from the time of an order granting

final approval.   The plumbers who purchase the products at issue invest in specialized tooling and become regular purchasers of copper press fittings, so that all or nearly all Class Members can submit for and receive the rebate portion of the Settlement Fund.[4]   Given the significant risks faced by Plaintiffs in proving liability and damages and certifying classes for indirect purchasers under multiple states' laws (*see* Plaintiffs' Motion for Final Approval), the size of the Settlement Fund is impressive.

The number of persons benefited by the Settlement also supports the fee award requested.   More than 88,000 Notices were sent to potential Settlement Class Members, and the Settlement Class was also alerted by a social media campaign.   Tens of thousands of plumbers and small businesses can recover substantial sums due to the efforts of Counsel.

### 2.    The Reaction of the Class to the Fee Request

Notice of the Settlement was mailed to over 88,000 Settlement Class Members.   Azari Decl., ¶¶ 13-15, pursuant to the Notice plan approved by the Court (ECF 99).   Settlement Class Members were informed in the Notice and on the settlement website that Counsel, *inter alia*, would apply for attorneys' fees and expenses of up to $4.5 million from the total $15 million.   To date, the only objection received was filed by a Steven Helfand, a former lawyer disbarred for

---

[4] The Cash Settlement Fund and the Rebate Program are, together, cash for the class members.   The distinction between them is essentially one of timing, so that they should be considered together for purposes of determining a fee from the common fund.  *See Rose*, 2020 U.S. Dist. LEXIS, at *23-24 (fund from which cash was paid to class members was for practical purposes a constructive common fund).

dishonest conduct in objecting to a class action settlement.[5]  The lack of substantial objections and lack of objection by any plumber strongly militates in favor of the award, and can be read as an endorsement of the results received and the services rendered by Class Counsel.  *Rose v. Travelers Home & Marine Ins. Co*., No 19-977, 2020 US Dist. LEXIS 126761, at *20 (E.D. Pa. July 20, 2020)(thirty nine exclusions and three objections were small numbers of exclusions and objections); *See Rite Aid*, 396 F.3d at 305; *Am. Investors*, 263 F.R.D. at 244; *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at *18 (D.N.J. Sept. 10, 2009).

### 3.    Class Counsel Prosecuted this Matter with Skill and Efficiency

Counsel are experienced not only in class action litigation, but also in antitrust class actions, and all have experience specific to the prosecution of indirect purchaser antitrust class actions, which requires the use of a panoply of state statutes instead of the federal antitrust laws.  (Burt Decl., ¶ 5 and Ex. A; Pritzker Decl. ¶¶ 24-27 and Ex. A).   They have fully demonstrated their knowledge, skill and efficiency during this litigation.  *See In re Royal Dutch/Shell Transp. Sec. Litig.,* CA No. 04-374, 2008 U.S. Dist. LEXIS 124269, at *77 (D.N.J. Dec. 8, 2008) (trial judge gauged counsel's ability to "effectively and efficiently litigate[] this Action from its inception[.]").   Counsel fully briefed motions to dismiss, nearly completed discovery of Plaintiffs, took extensive written discovery on the merits, reviewed hundreds of thousands of pages of produced materials, and

---

[5] *See* Pritzker Decl., ¶ 54, Ex. L.  Plaintiffs will respond to any objections in a December 10, 2020 supplemental filing after the deadline for filing objections has passed.

negotiated a settlement before an experienced neutral mediator having a full opportunity to assess the risks of the litigation.

Counsel's efforts and expertise produced an excellent result for the Class: $15 million in payments to Class Members, plus forward-looking business therapeutics. Thus, even those plumbers in the *Illinois Brick* non-repealer states will benefit from the Settlement. Counsel do not ask the Court to quantify the non-monetary terms, but this benefit represents real value to Class Members, and should be considered when assessing the result achieved.

Defendant was represented by Squire Patton Boggs, a firm with a national and international reputation and extensive legal resources and talent, which were put on full display in Defendant's full court press on Plaintiff-side discovery. Counsel's ability to advocate effectively for the Class against this strenuous opposition supports the fee request. *See, e.g., Am. Investors*, 263 F.R.D. at 244 (the fact that defense counsel "vigorously defended against the claims of the class" weighed in favor of the fee request); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 357-58 (S.D.N.Y. 2005) ("formidable opposing counsel from some of the best defense firms in the country").

### 4.    The Complexity and Duration of the Litigation

This case is an array of class actions within a class action, more complex than even typical antitrust cases. The Multi-State Settlement Class is composed of those who live in so-called *Illinois Brick* repealer states. These Class Members must, and did, plead violations of individual state laws, certify a class for these state law claims, and prepare these claims for trial together, while providing the Court with a manageable means of trying the entire controversy.

Further, the case does not fit within the well-defined, classic *per se* violations of antitrust law, which generally arise from horizontal agreements.

Instead, this case arose from unilateral conduct.  Plaintiffs faced  more elements of proof, more difficult evidentiary hurdles, and more complex economics.  Counsel also had to deal with the significant uncertainty and delay of litigating in a global pandemic, which has required alterations to many procedures and delayed innumerable jury trials, only adds to the risk and complexity.  *See Gasper v. Collective*, No. 19-2676, 2020 U.S. Dist. LEXIS 182617, at *7 (E.D. Pa. Oct. 2, 2020). If Plaintiffs were unsuccessful on any one of these several complex issues, they risked a defeat in whole or in part on class certification, or a total loss on the merits, or at the very least, a significant decrease in damages. This factor further weighs in favor of Class Counsel's fee request.

### 5.     The Amount of Time Devoted to the Case by Class Counsel and the Risk of Nonpayment

The risks of an unsuccessful result in this Action, and therefore non-payment, were significant.  When Counsel undertook this litigation on a contingent fee basis, they placed a large investment of time and resources at significant risk. *See* Pritzker Decl., ¶ 29, Burt Decl., ¶ 6.

Counsel have devoted over 7700 hours to this litigation (and incurred $53,643.40 in unreimbursed costs), with no compensation to date.[6]  "[T]he risk associated with taking a case on contingency is a real and important factor to consider." *Hall v. AT & T Mobility LLC*, No. 07-5325, 2010 U.S. Dist. LEXIS 109355, at *66 (D.N.J. Oct. 13, 2010).

---

[6]   In addition to the attorney time devoted to date, Class Counsel will also be required to spend additional time in connection with the administration of the claims on behalf of the Settlement Class members and the distribution of the Settlement Fund, but do not seek any additional compensation for these efforts.

Finally, the law pertaining to class certification and specifically to certification of indirect purchaser classes is in flux. At present, one of the largest such cases is on interlocutory appeal to the Ninth Circuit Court of Appeals: *Olean Wholesale Foods v. Bumble Bee Foods Inc., et al.,* No. 19-56514, No. 19-56514, 2020 U.S. App. LEXIS 18779 (9th Cir. June 15, 2020) The Third Circuit recently reversed certification of a similar case, *In re Lamictal Direct Purchaser Antitrust Litig.,* 957 F.3d 184 (3d Cir. 2020). Counsel undertook this litigation knowing that a single bad precedent could significantly damage the prospects of the case, even if the facts were exactly as anticipated. The risk assumed by Counsel further supports the fee request.

### 6.     The Fee Request is Fair and Reasonable When Compared to the Awards in Similar Cases

Counsel's request for attorneys' fees is consistent with attorneys' fees awarded by courts in this Circuit. "[M]ost fees appear to fall in the range of nineteen to forty-five percent." *Hall*, 2010 LEXIS 109355, at *50 (awarding 33.3% fee) (citations omitted). Courts in this Circuit have frequently approved percentage-of-recovery fees greater than or equal to the requested fee. *See, e.g. Stevens v. SEI Invs. Co*., No. 18-4205, 2020 U.S. Dist. LEXIS 35471, at *39-40 (E.D. Pa. Feb. 26, 2020) (one third); *Milliron*, 2009 U.S. Dist. LEXIS 101201, at *24 (one third); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *43 (D.N.J. Nov. 9, 2005) (Hochberg, J.) (one third); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (one third); *Clarke v. Flik Int'l Corp.,* No. 17-1915 (SRC), 2020 U.S. Dist. LEXIS 26306, at *9 (D.N.J. Feb. 14, 2020) (34%). The requested fee is consistent with fees typically negotiated in the private marketplace between attorneys and their clients, which are often larger than the percentage of recovery sought here. *See*

*AT&T*, 455 F.3d at 165 (the district court may consider the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement).  If this were a non-class action litigation, the customary contingent fee for a complex case such as this one would likely range between 30 and 40 percent of the recovery.  *See, e.g., Hall*, 2010 U.S. Dist. LEXIS 109355, at *71 (requested fee of 33.3% is "consistent with a privately negotiated contingent fee in the marketplace"); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (35 percent "comparable to the likely … private contingent fee agreement at the time counsel was retained").

The requested fees are also reasonable if the Court uses the "lodestar method" as a crosscheck.  *See AT&T*, 455 F.3d at 164[7]  Counsel have devoted approximately 7700 hours to this litigation, for a combined lodestar at hourly rates[8] of $3,797,023 (Burt Decl. ¶ 15, 20; Pritzker Decl., ¶ 40; Isquith Decl., ¶ 4).  As a result, the requested fee constitutes a modest multiple of just 1.09 times lodestar, which is well within the range of multipliers approved by courts in this Circuit.  *See, e.g., Prudential*, 148 F.3d at 341 (multipliers of up to four are frequently awarded) (quoting 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, §

---

[7]  The Third Circuit has noted the lodestar cross-check calculation need not entail "mathematical precision" or "bean-counting," *Rite Aid*, 396 F.3d at 306, and is "'not a full-blown lodestar inquiry,'" *id.* at 307, n.16 (quoting Report of the Third Circuit Task Force, Selection of Class Counsel, 208 F.R.D. 340, 423 (2002)).

[8]  These calculations are based on historic rates and not current rates, though the Supreme Court and other courts have held that the use of *current* rates is proper, since such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).  In determining reasonableness of the hourly rates, the Court should also take into account the attorneys' legal reputation, experience and status.  Class Counsel are among the most prominent, experienced and well-regarded class action litigators in the nation.  *See* Pritzker Decl., Ex. A.; Burt Decl. Ex. A.; Isquith Decl. ¶ 1.

14.03 at 14-5 (3d ed.1992)); *James v. Global Tel\*Link Corp.*, No. 2:13-cv-04989-WJM-MF, 2020 U.S. Dist. LEXIS 196916, at \*31 (D.N.J. Oct. 20, 2020) ("lodestar multiplier of 1.43, well within the reasonable range approved  by the Third Circuit…"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier); *In Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 588-90 (E.D. Pa. 2005) (multiplier of 6.96); *In re Aetna, Inc. Sec. Litig.*, MDL 1219, 2001 U.S. Dist. LEXIS 68, at \*49 (E.D. Pa. Jan. 4, 2001) (3.6 multiplier); *In re Ravisent Techs., Inc. Sec. Litig.,* No. 00-CV-1014,  2005 U.S. Dist. LEXIS 6680, at \*43 (3.1 multiplier where attorneys fees constituted one third of settlement fund); *In re Vicuron Pharms., Inc. Secs. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa. 2007) (awarding a lodestar multiplier of 2.23 and noting that it was "lower than in numerous other cases where multipliers between 2.5 and 4 have been approved"); *Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, 2008 U.S. Dist. LEXIS 25712 (M.D. Pa. Mar. 31, 2008) (2.17 multiplier).

### III.  CLASS COUNSEL'S OUT-OF-POCKET EXPENSES SHOULD BE REIMBURSED

Class Counsel also request that the Court grant their motion for reimbursement of $53,643.40 in litigation expenses necessarily incurred in connection with the prosecution of this litigation.  *AT&T*, 455 F.3d at 169; *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995).  *See also In re Safety Components Int'l Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("adequately documented and reasonable and appropriately incurred" expenses reimbursed); Here, each law firm that participated in this litigation has submitted separate declarations attesting to the accuracy of its expenses, which amount to $53,643.40. *See* Burt Decl. ¶¶ 12, 20, Exs. B-1-B-11; Prizker Decl. ¶ 42.  These expenses were reasonably incurred and necessary to prosecute this litigation.

The Notice informed Settlement Class Members that Counsel would seek total fees and reimbursement of expenses from the Settlement Fund in an amount up to $4.5 million.

## IV.    THE PROPOSED SERVICE AWARDS ARE REASONABLE

In the exercise of its discretion, the Court may provide an award to class representatives to compensate them "for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal citation omitted).  Class Counsel request that each class representative be awarded $2000 for their time and efforts on behalf of the Settlement Class in this litigation.  Each Plaintiff was subjected to discovery burdens that contributed to the litigation and benefited the Class through their own expertise in ways not present in some class actions, as their engagement with the product was more complex than in, for example, a consumer case.  For example, the Plaintiffs offered up their work premises or vehicles for inspection, photographic cataloguing of press-fitting inventory and tools, in addition to their deposition, sometimes splaying boxes of parts and tooling on the pavement for defense counsel to inspect.  Each Class representative combed through both distributor invoices, and their own invoices to customers, to respond to detailed discovery in the ways that businesses do, but that consumer plaintiffs typically do not.  For tradespeople with small enterprises who typically have minimal office services, these contributions were a substantial inconvenience or even a burden, which they undertook for the benefit of the Class.  Plaintiffs were available to, and did, answer questions from and provide industry information to Class Counsel to aid in the preparation of their claims, discovery responses, and formation of strategy. *See* Pritzker Decl., ¶¶ 44-47, and attached Plaintiff declarations Exs. B-J.

The request is well within the awards granted in similar cases in this Circuit, and represents a fair and reasonable amount in light of the benefit that the Plaintiffs helped to achieve for the Class, as well as the considerable time and expense they spent responding to Defendant's discovery efforts. *See, e.g., Mejia v. KVK-Tech, Inc.*, No. 2:19-cv-04841-JDW, 2020 US Dist. LEXIS 162235, at *10 (E.D. Pa. Sept. 4, 2020)($5000 per plaintiff); citing cases with larger awards.

The Class Notice provided that Counsel would be applying to the Court for a service award for each of the nine named Plaintiffs in an amount not to exceed $2000 each.

## V.   <u>CONCLUSION</u>

Counsel's request for attorneys' fees of 27.5% of the $15 million Settlement Fund, reimbursement of expenses incurred in connection with the prosecution and settlement of this Action in the amount of $52,932.36 and service awards of $2000 per Plaintiffs should be approved for the reasons stated herein.

Dated: November 13, 2020                    Respectfully Submitted,

**OBERMAYER REBMANN
MAXWELL & HIPPEL LLP**

*/s/ Walter W. Cohen*
Walter W. Cohen, Esquire
Cara Boyanowski, Esquire
200 Locust Street, Suite 400
Harrisburg, PA 17101-1508
Telephone:  (717) 221-7920
Walter.cohen@obermayer.com
cara.boyanowski@obermayer.com

**PRITZKER LEVINE LLP**

*/s/ Elizabeth C. Pritzker_____*

Elizabeth C. Pritzker, Esquire

Bethany L. Caracuzzo, Esquire

1900 Powell Street, Suite 450

Emeryville, CA 94608

Telephone: (415) 692-0772

ecp@pritzkerlevine.com
bc@pritzkerlevine.com

**ZWERLING, SCHACHTER &
ZWERLING, LLP**

*/s/ Fred T. Isquith, Sr._____*
Fred T. Isquith, Sr., Esquire
Fred T. Isquith, Jr., Esquire
41 Madison Avenue
New York, New York 10010
Telephone: (212) 223-3900
ftisquith@zsz.com
fisquith@zsz.com

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**

*/s/ Thomas H. Burt_____*
Thomas H. Burt, Esquire
Patrick Donovan, Esquire
270 Madison Avenue
New York, NY 10016
Telephone:  (212) 545-4600
burt@whafh.com
donovan@whafh.com

*Interim Settlement Class Counsel for
the Indirect Purchaser Plaintiffs*